# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EHLENA FRY, a minor, by her next
friends, STACY FRY and BRENT
FRY,                                             Case No. 12-15507

        Plaintiffs,                         Judge Lawrence P. Zatkoff
                                    Magistrate Judge David R. Grand

v.

NAPOLEON COMMUNITY
SCHOOLS, JACKSON COUNTY ISD,
and PAMELA BARNES,

        Defendants.

---

## RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

Peter M. Kellett (P34345)         Denise M. Heberle (P64145)
James F. Hermon (P53765)       Heberle & Finnegan
Brandon M. Blazo (P71172)     Counsel for Plaintiffs
Counsel for Plaintiffs           2580 Craig Rd.
DYKEMA GOSSETT PLLC      Ann Arbor, MI  48103
400 Renaissance Center        (734) 302-3233
Detroit, MI  48243             dmheberle@gmail.com
(313) 568-6800
jhermon@dykema.com


Michael J. Steinberg (P43805)    Gayle C. Rosen (P46874)
Kary L. Moss (P49759)           Counsel for Plaintiffs
Counsel for Plaintiffs           715 N. University Ave., Suite 202
ACLU Fund of Michigan        Ann Arbor, MI  48104
2966 Woodward Ave.          (734) 763-9920
Detroit, MI  48201            gayleose@umich.edu
(313) 578-6814
msteinberg@aclumich.org

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

## QUESTIONS PRESENTED

Whether the Plaintiffs Were Required To Exhaust Their Administrative Remedies Under the IDEA Where The Only Claims Made Are Under Different Federal Statutes and Seek Relief Unavailable Under the IDEA.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

# <u>TABLE OF CONTENTS</u>

**Page**

QUESTIONS PRESENTED ........................................................................ i

TABLE OF MOST RELEVANT AUTHORITY ................................................... iii

I.      INTRODUCTION ........................................................................1

II.     STATEMENT OF RELEVANT FACTS ........................................2

III.    ARGUMENT ...............................................................................3

        A.      Defendants Have A Legal Obligation To Provide A Reasonable
                Accommodation To Ehlena Fry, Independent Of Their
                Obligations Under The IDEA To Provide A Free And
                Appropriate Public Education. ...........................................3

        B.      Exhaustion of Administrative Prerequisites Under The IDEA Is
                Required Only Where An ADA or Rehabilitation Act Claim
                Would Require The Court To Pass Upon The Adequacy Of A
                Proposed IEP. ....................................................................6

        C.      Plaintiffs' Complaint Does Not Implicate The Rights Protected
                By The IDEA.....................................................................11

        D.      The Cases Relied Upon By Defendants Are Distinguishable
                From The Case At Bar. .......................................................12

IV.     CONCLUSION...........................................................................15

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

# TABLE OF MOST RELEVANT AUTHORITY

**Page**

*R.K. v Bd. Of Education of Scott County, Kentucky*,
   755 F.Supp.2d 800 (E.D. Ky. 2010) *rev'd on other grounds*
   494 Fed.Apps. 589 (6th Cir. 2012) ................................................................8

*Sullivan v. Vallejo City Unified School Dist*.,
   731 F.Supp. 947 (E.D. Cal. 1990) ...............................................................9

20 U.S.C. §1415 ......................................................................................15

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

# I.   INTRODUCTION

Defendants' motion relies entirely upon an administrative exhaustion prerequisite that is inapplicable here.  The IDEA requires plaintiffs to exhaust their administrative remedies before bringing a case for alleged violation of the ADA or the Rehabilitation Act in certain cases, but that requirement is not universal by any means.  The statute itself provides that the exhaustion requirement applies only where the ADA/Rehabilitation Act claim is seeking relief that also is available under the IDEA.  20 U.S.C. §1415(l).  While that requirement can be triggered by a student prosecuting a claim against a school district from which they receive educational instruction, administrative exhaustion is not required every time students bring an ADA or Rehabilitation Act claim against their school.

Determining whether exhaustion is required in a particular case requires the Court to examine the particular allegations in the complaint, and determine whether the claim is seeking relief that also is available under the IDEA.  That is not the case here.  The relief being sought by Plaintiffs does not implicate the educational program that the Defendants created, nor does it challenge the sufficiency of that program in providing Ehlena Fry a free and appropriate public education.  Rather, they implicate only the school's failure to comply with federal law requiring accommodation of disabilities in places of public accommodation, such as schools.  Defendants' motion must be denied.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

## II.    STATEMENT OF RELEVANT FACTS

Plaintiff Ehlena Fry was born with a severe form of cerebral palsy that significant limits her motor skills and mobility.  She is not impaired cognitively, but needs physical assistance in her daily activities.  Complaint ¶2.  In 2009, Ehlena obtained a service dog prescribed by her pediatrician to help her live as independently as possible.  The dog, a Goldendoodle named "Wonder," was certified and trained to help Ehlena with mobility and to assist her in daily activities, such as retrieving dropped items, opening and closing doors, turning on and off lights, and taking her coat off.  *Id*. at ¶3.  It was the pediatrician and Ehlena's family's intent to have Wonder accompany Ehlena at all times to facilitate her independence and to ensure that Ehlena and Wonder would bond after training.  *Id*. at ¶4.

Despite knowing of the Frys' plans, Defendants refused to permit Ehlena to attend school with her service dog.  Complaint at ¶4.  As a result, Ehlena was forced to attend school without her prescribed service dog from October 2009 to April 2010.  *Id*. at ¶5.  After Ehlena's attorneys met with the school district's counsel, Ehlena was permitted to bring the dog to school on a "trial basis" that ended with the end of the school year.  During that trial period, however, school administration refused to allow Ehlena to use Wonder as a service dog.  Rather, the dog was required to remain in the back of the room during classes, was forbidden

2

2:12-cv-15507-LPZ-DRG   Doc # 18   Filed 08/19/13   Pg 7 of 20   Pg ID 237

from assisting Ehlena with many tasks he had been specifically trained to do, and was forbidden from accompanying and assisting Ehlena during recess, lunch, computer lab, library time and other activities. *Id*.

Following the trial period, the school's administration refused to modify the school's policies to accommodate Ehlena's disabilities, and even refused to recognize Wonder as a service dog. Complaint at ¶6. It is these refusals, and not the education plan formulated by the school, that is the foundation for Plaintiff's claim against the school.

## III. ARGUMENT

**A. Defendants Have A Legal Obligation To Provide A Reasonable Accommodation To Ehlena Fry, Independent Of Their Obligations Under The IDEA To Provide A Free And Appropriate Public Education.**

Title II of the Americans With Disabilities Act applies to public entities such as the Napoleon Community Schools and the Jackson County Intermediate School District. *See* generally 42 U.S.C. §§12131-65. The section of Title II relevant to this case provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

A separate section of Title II defines a "qualified individual with a disability" as:

3

> [A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131(2). And Congress, in the "Findings" section of the ADA, observed that "individuals with disabilities continually encounter various forms of discrimination, including…failure to make modifications to existing facilities and practices…." 42 U.S.C. §12101(a)(5).

Title II directs the federal government to promulgate regulations to implement the ADA. 42 U.S.C. §12134. The implementing regulations prohibit disability discrimination and require public entities to make reasonable accommodations for disabled persons. Section 35.130(a) of title 28 of the Code of Federal Regulations provides: "No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. §35.130(a). The subsection of this regulation related to reasonable accommodations provides: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R.

4

§35.130(b)(7). The Supreme Court has called § 35.130(b)(7) the "reasonable-modifications regulation." *Olmstead v. L.C.,* 527 U.S. 581, 592, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).

Like the ADA, the Rehabilitation Act prohibits disability discrimination, but the Rehabilitation Act, unlike the ADA, applies only to recipients of federal funding (such as District 11). The prohibition on discrimination is found in what is known as § 504 of the Rehabilitation Act, which provides: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The Rehabilitation Act regulations include a provision similar to the ADA's reasonable-modifications regulation discussed above. Section 41.53 of title 28 of the Code of Federal Regulations, titled "Reasonable accommodation," provides: "A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 28 C.F.R. §41.53.

There is no dispute regarding whether Ehlena Fry was a qualified individual with a disability.  Her cerebral palsy, and the limitations upon her physical abilities

5

imposed by their condition establish beyond any reasonable question that she is entitled to the protections of the ADA and the Rehabilitation Act. Defendants therefore were required by law to make accommodations that were reasonable and necessary to permit Ehlena Fry to take advantage of the public school facilities. That obligation, which Defendants failed to satisfy, was entirely separate from the Defendants' obligation to provide a free and appropriate public education under the IDEA.

**B.     Exhaustion of Administrative Prerequisites Under The IDEA Is Required Only Where An ADA or Rehabilitation Act Claim Would Require The Court To Pass Upon The Adequacy Of A Proposed IEP.**

As Defendants note in their brief, the IDEA contains an administrative exhaustion requirement, which provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action *under such laws seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. §1415(l) (emphasis added). The plain text of the statute does not impose a universal requirement that exhaustion occur before any ADA or Rehabilitation Act claim be brought by a student against a school district. Rather, it imposes that requirement only where the lawsuit is seeking relief that *also would be available*

6

*under the IDEA*.  The question that must be answered, therefore, is whether the relief that Plaintiffs are seeking in this case would be available under the IDEA, not merely whether the case arises in the educational context.

To make that determination, courts typically look to the nature of the wrongs alleged.  *See A.P. ex rel. Peterson v. Anoka–Hennepin Indep. Sch. Dist. No. 11*, 538 F.Supp.2d 1125 (D. Minn. 2008) (no requirement of exhaustion where § 504 claims for failure to accommodate diabetic student's need for administration of insulin and testing of blood sugar were not IDEA-type claims and related only tangentially to his education); *Sullivan ex rel. Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F.Supp. 947 (E.D. Cal.1990) (no requirement of exhaustion under IDEA's predecessor prior to suit for relief under Rehabilitation Act where disabled student sought to be accompanied by service dog at school but did not dispute the adequacy of educational program or aver that service dog was educationally necessary); *Doe ex rel. Doe v. Belleville Pub. Sch. Dist., No. 118*, 672 F.Supp. 342 (S.D. Ill.1987) (no requirement of exhaustion under IDEA's predecessor prior to suit for relief under Rehabilitation Act where child diagnosed with AIDS and excluded from classroom did not allege that disability affected educational performance and was not in need of "special education" due to medical condition). The question properly is framed not as what statutes are being cited by the litigants, but rather what the plaintiff is hoping to accomplish through the suit.  If

7

the goal is some sort of relief unavailable from the IDEA, then exhaustion is not necessary.

A number of cases illustrate this principle vividly.  For example, in *R.K. v. Bd. Of Education of Scott County, Kentucky*, 755 F. Supp. 2d 800 (E.D. Ky. 2010), *rev'd on other grounds* 494 Fed. Appx. 589 (6th Cir. 2012), the parents of a kindergarten student diagnosed with Type I diabetes sued the school district he attended after it refused to allow their child to attend a neighborhood school, instead requiring him to attend a different facility where medical personnel were available to assist with his insulin pump and carbohydrate counts.  *Id*. at pp. 804-05.  The parents argued that the school had an independent obligation under the ADA and the Rehabilitation Act to accommodate their child's disability by providing trained medical personnel at his neighborhood school, rather than requiring the child to attend a school further away were medical personnel already were available.  *Id*.  The parents did not claim that the refusal to permit their child to attend the neighborhood school deprived him of a free and appropriate public education under the IDEA.  *Id*.

The school district moved to dismiss on the same grounds as Defendants do here – that the parents had not exhausted the IDEA's administrative requirements.  That motion was denied, based upon the nature of the relief being sought.  The trial court noted that, "it is common sense that a disabled child who asserts

8

constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative remedies under the IDEA before filing suit under §1983 or other applicable law." *Id*. at 806 *citing Franklin v. Frid*, 7 F. Supp. 2d 920, 925 (W.D. Mich. 1998).  Because the claims asserted arose from concerns about how the insulin pump and sugar levels would be monitored, and not the way in which the school provided an education to the child, the ADA and Rehabilitation Act claims were not subject to exhaustion.  *Id*. at 807.

A similar result was reached by the court in *Sullivan v. Vallejo City Unified School Dist*., 731 F. Supp. 947 (E.D. Cal. 1990), a case remarkably similar to this one.  The plaintiff in *Sullivan* was a student diagnosed with cerebral palsy, which confined her to a wheelchair.  After receiving a service dog to assist her with the activities of daily living, Sullivan's school refused to permit her to attend school with her dog.  Sullivan sued under a number of state and federal laws, including the Rehabilitation Act of 1974.[1]

The school district moved to dismiss the Rehabilitation Act claim, citing the failure of Sullivan to exhaust her administrative remedies.  The trial court denied that motion, noting the distinct purposes and obligations imposed by the

---

[1] At the time of the *Sullivan* case, the ADA had not been passed, and a predecessor to the IDEA, the Education of the Handicapped Act ("EHA") was being interpreted.  The administrative exhaustion requirements of the EHA, however, were the same as those incorporated into the subsequent IDEA.

9

Rehabilitation Act and the EHA upon school districts. The court went on to hold that:

> Defendants' argument is premised on the erroneous assumption that plaintiff claims she is being deprived of a "free appropriate public education" within the meaning of the EHA as a result of defendants' decision to exclude her service dog from school premises. Plaintiff, however, does not dispute that the IEP created for her pursuant to EHA is adequate from an educational standpoint, nor has she alleged that the service dog is educationally necessary. Properly construed, plaintiff's claim is that whether or not the service dog is educationally necessary, defendants have discriminated against her on the basis of her handicap by arbitrarily refusing her access if she is accompanied by her service dog.
>
> The consequences of plaintiff's pleading relative to defendants' motion seems quite straightforward. Under plaintiff's complaint, she may prevail by demonstrating that failing to make reasonable accommodations for her use of a service dog amounts to arbitrary discrimination. Put another way, once plaintiff has made a threshold showing that her decision to use the service dog is reasonably related to her disability, the sole issue to be decided under section 504 is whether defendants are capable of accommodating plaintiff's choice to use a service dog. The issue of whether the service dog enhances plaintiff's educational opportunities, which is central to the EHA inquiry, is completely irrelevant under section 504. It thus cannot be said that the relief sought by plaintiff – an order restraining defendants from excluding plaintiff's service dog whether or not it is educationally enhancing – is available under the EHA. Accordingly, plaintiff need not exhaust the EHA administrative remedies, and defendants' motion to dismiss the federal claim for lack of subject matter jurisdiction must be denied.

*Sullivan*, 731 F. Supp. at 951 (citations and footnotes omitted).

To determine whether Ehlena Fry was required to exhaust the IDEA administrative process before commencing suit, therefore, the Court must examine

10

the nature of the relief being sought.  If the relief is a change in the educational program being provided by the school – relief that is clearly within the purview of the IDEA – then administrative exhaustion is required, even if the statute under which relief is sought is something other than the IDEA.  However, if the relief is simply requiring the Defendants to comply with their independent obligation to accommodate disabilities under another federal law, and that does not require modification of the educational program, then no exhaustion is required.  The relief being sought by Plaintiffs here falls within the latter category, rendering dismissal inappropriate.

**C.    Plaintiffs' Complaint Does Not Implicate The Rights Protected By The IDEA.**

The Plaintiffs here are not complaining that the IEP assembled by the Defendants failed to provide a free and appropriate public education for Ehlena Fry.  The educational program created by the Defendants with input from Ehlena's family and medical providers did provide the educational opportunity that is required as a matter of law.  However, regardless of the contents of Ehlena's educational program, there is an independent issue of the Defendants refusing to permit her to use a service animal in a place of public accommodation.

Both the ADA and the Rehabilitation Act create an independent obligation for the Defendants not to discriminate against Ehlena Fry by prohibiting her from using a properly trained service animal at school in order for her to carry out the

11

routine requirements of daily living.  A school district cannot prohibit its students from using wheelchairs and then hide behind the argument that they had an aide ready and able to physically carry a student from one classroom to another as part of an IEP, yet that is precisely analogous to Defendants' position here.

The IDEA addresses only the Defendants' obligation to formulate a plan to provide a student with a free and appropriate public education.  A separate and wholly independent obligation exists not to discriminate against students with disabilities by preventing them from having access to assistive devices.  The remedy for failing to fulfill that obligation lies not within the IDEA, but rather within the ADA and Rehabilitation Act.  There is no obligation to exhaust the administrative process for such a non-IDEA claim against an educational institution.

**D.    The Cases Relied Upon By Defendants Are Distinguishable From The Case At Bar.**

In an attempt to convince the Court to dismiss this case, Defendants cite a number of cases that are factually or legally distinguishable from the claims being made by the Plaintiffs here.

Defendants first rely upon the *Sharbowski v. Utica Community Schools* case, an unpublished report and recommendation authored by Magistrate Judge Michelson.  While it is true that the court dismissed the complaint based upon the failure to exhaust the administrative remedies available under the IDEA, the facts

12

of the case are entirely distinguishable from those before the Court here. In *Sharbowski*, the plaintiff filed a complaint under the IDEA, the Family Educational Rights and Privacy Act, the ADA and the Rehabilitation Act complaining that that the defendant school district had failed to provide proper extended school year services to a student, used outdated forms for the IEP, and generally mishandled the IEP process. The Court dismissed the complaint, finding that the relief being requested under the statutes all pertained directly to the IEP process and therefore sought relief available under the IDEA. The balance of the opinion focused upon the various potential exceptions to the administrative exhaustion requirement.

*Sharbowski* therefore is factually distinguishable from this case. Here, Ehlena Fry is not seeking modification of her IEP or any change in her educational program, as *Sharbowski* clearly was. While *Sharbowski* does stand for the proposition that administrative exhaustion is required in IDEA cases, no one is disputing that legal proposition. The question is whether the IDEA administrative exhaustion requirement is required in this particular case – and *Sharbowski* sheds no light on that question.

*Amidon v. Michigan*, another unpublished opinion of this Court also has no real application in this case. In *Amidon*, the plaintiff sued four school districts and a whole host of school officials and employees, claiming that over a ten year period the myriad defendants failed to meet the student's educational needs by

13

either failing to diagnose him as being in need of special educational services, or by preparing an IEP that did not adequate address his particular educational needs. The Complaint was brought under a variety of federal and state laws, but the relief sought was the same – economic damages for failure of the various defendants to comply with their obligations under the IDEA.   The Court dismissed that complaint as well, again for failure to exhaust the IDEA's administrative procedures.  The issue in *Amidon* was the same as the one in *Sharbowski* – whether the failure to exhaust the administrative procedures was excusable, not whether the relief being sought under the ADA or Rehabilitation Act claims was the same as the relief available under the IDEA.

Finally, Defendants point to *Cave v. East Meadow Union Free School*, 514 F.3d 240 (2nd Cir. 2008), a case from the Second Circuit Court of Appeals involving a school district denying a student the right to bring a service animal into a school.  In *Cave*, however, the presence of the service dog had a direct impact upon the educational program being provided to the student.  To allow the student to bring the dog to class, his entire class schedule and overall educational program would have had to be modified in order to avoid the exposure of allergic students and teachers to the dog.  As a result, the presence of the service animal had a direct and immediate impact upon the educational program that had been formulated through the IEP process.  No such impact exists in this case, and none was alleged.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

The substance of the relief requested is not modification of the IEP in any way and, as a result the remedies provided by the IDEA simply are not implicated by this lawsuit, as they were in *Cave*.

## IV.   CONCLUSION

The obligations of public schools towards students with disabilities, such as Ehlena Fry, do not begin and end with the obligation to provide a free and appropriate public education.  All school districts also must accommodate students with disabilities, aside from the educational program provided.

Ehlena Fry had a right under federal law to bring her service animal to school with her.   That right, which is wholly unrelated to her educational programs, was ignored by the Defendants.   No administrative process must be exhausted before the Plaintiff may seek compensation for that violation of the law. Defendants' Motion must be denied.

Respectfully submitted,

DYKEMA GOSSETT PLLC
By:  /s/  James F. Hermon
      Peter M. Kellett (P34345)
      James F. Hermon (P53765)
      Brandon M. Blazo (P71172)
      Attorneys for Plaintiffs
      400 Renaissance Center
      Detroit, MI  48243
      Telephone:  (313) 568-6800
      pkellett@dykema.com
      jhermon@dykema.com
Dated:  August 19, 2013        bblazo@dykema.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2013, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system, and I hereby certify that I

have mailed by United States Postal Service to any non-ECF user.

Dykema Gossett PLLC

By: /s/ James F. Hermon
James F. Hermon
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI  48243
jhermon@dykema.com
(P53765)

Dated:  August 19, 2013
DET02\470572.4
ID\JFH - 084145\0012

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

16