**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EF, a minor, by her next friends,
STACY FRY and BRENT FRY,

                                                              Case No. 12-15507
     Plaintiffs,                                        Hon. Lawrence P. Zatkoff
v.

NAPOLEON COMMUNITY SCHOOLS,
JACKSON COUNTY INTERMEDIATE SCHOOL
DISTRICT, and PAMELA BARNES, in her individual
capacity,

     Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 10, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss [dkt 17]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendants' Motion is GRANTED.

## II. BACKGROUND

A. FACTUAL BACKGROUND

EF, an eight-year-old girl, was born with spastic quadriplegic cerebral palsy, the most severe form of that disorder. Spastic quadriplegic cerebral palsy affects EF's legs, arms, and body, and significantly limits her motor skills and mobility. She is not cognitive impaired, however, but requires physical assistance in her daily activities.

On or about May 2008, EF's pediatrician wrote a prescription for a service dog to assist her in everyday activities. Before EF enrolled in Ezra Eby Elementary School's kindergarten program for the 2009–10 school year, Plaintiffs (EF's parents) informed Defendants[1] Napoleon Community Schools and Jackson County Intermediate School District ("Defendants") that they intended to obtain a service dog for EF. Defendants allegedly "led [Plaintiffs] to believe that the service dog could attend school with [EF]." With the success of a local community fundraiser, EF and Plaintiffs were able to pay for the training of a service dog named "Wonder."[2] In the fall of 2009, EF and her family trained with Wonder at service animal training facility in Ohio.

According to Plaintiffs, Wonder "is a specially trained and certified service dog and assists [EF] in a number of ways, including, but not limited to, retrieving dropped items, helping her balance when she uses her walker, opening and closing doors, turning on and off lights, helping her take off her coat, helping her transfer to and from the toilet." Dkt. # 1, ¶ 27. Wonder also "enables [EF] to develop independence and confidence and helps her bridge social barriers." *Id.* at ¶ 28.

In October 2009, Defendants informed Plaintiffs that Wonder could not accompany EF to school. On January 7, 2010, Defendants convened a meeting wherein the Individual Educational Program

---

[1] Plaintiffs only brought one claim (Count III) against Defendant Pamela Barnes. The Court, however, dismissed that claim on January 18, 2013. Accordingly, Defendant Pamela Barnes is no longer a party to this suit.
[2] Wonder is a Goldendoodle, a cross between a Golden Retriever and a Poodle. Most Goldendoodles have a low or non-shedding coat, which generally makes the breed tolerable for people with allergies.

2

("IEP") team considered whether Wonder was necessary to provide EF with a free appropriate public education ("FAPE").[3] The IEP team concluded that EF was successful in the school environment without Wonder, and that all of her "physical and academic" needs were being met by the IEP program and services in place. *Id.* at ¶¶ 32–33. Subsequent to that decision, Plaintiffs and Defendants negotiated an agreement whereby EF was allowed to bring Wonder to school for a 30-day trial period that commenced on April 12, 2010, and was ultimately extended through the end of the school year. Although Wonder was permitted in school, Plaintiffs allege that Defendants required Wonder "to remain in the back of the room during classes," "forbade [him] from assisting [EF] with many tasks he had been specifically trained to do," "refused to allow [him] to accompany and assist [EF] during recess, lunch, computer lab and library," and "prohibited [EF] from participating in other activities with Wonder such as walking the track during 'Relay for Life,' a school play and 'field day.'" *Id.* at ¶¶ 35–37. Following the trial period, Defendants not only refused to modify the school's policies, but also refused to recognize Wonder as a service dog.

Plaintiffs filed a complaint with the United States Department of Education Office of Civil Rights ("OCR") on July 30, 2010. On May 3, 2012, the OCR issued a disposition letter finding that EF's school district and intermediate school district (*i.e.*, Defendants) violated her rights under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the federal regulations implementing those laws. Attempting to find an amicable resolution to the OCR complaint, Defendants entered into a resolution agreement wherein EF could return to the elementary school with Wonder and could utilize the dog to assist her throughout the school.

Plaintiff Brent Fry conversed with Defendant Pamela Barnes during the summer of 2012 to discuss EF's return with Wonder. According to Plaintiffs, that conversation evoked "serious concerns

---

[3] Under the Individuals with Disabilities Act, the means by which a state provides special education services is through the development of IEP's that are individually tailored to the unique needs of each student.

3

that the administration would resent" EF. Plaintiffs located a different public school in Washtenaw County for EF to attend with Wonder.[4]

## B. PROCEDURAL BACKGROUND

Plaintiffs filed their three-count complaint on December 17, 2012, alleging the following causes of action: violation of Section 504 of the Rehabilitation Act against Defendants Napoleon Community Schools and Jackson County Intermediate School District (Count I); violation of Title II of the Americans with Disabilities Act against Defendants Napoleon Community Schools and Jackson County Intermediate School District (Count II); and violation of the Michigan Persons with Disabilities Civil Rights Act against all Defendants (Count III). On January 18, 2013, the Court dismissed Plaintiffs' state-law claim (Count III).

Pending before the Court is Defendants' motion seeking dismissal of Plaintiffs' remaining federal claims.

### III. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court's review under Fed. R. Civ. P. 12(c) is the same as the review under Fed. R. Civ. P. 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Thus, the plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above

---

[4] While awaiting a ruling from the OCR, Plaintiffs homeschooled EF.

4

the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

The crux of the parties' dispute is narrow and relatively straightforward. Defendants argue Plaintiffs failed to exhaust their administrative remedies with the Michigan Department of Education before filing this federal suit and, as a result, their federal claims should be dismissed. Plaintiffs, on the other hand, dispute that they were required to adhere to the exhaustion requirement. The Court finds Defendants' position meritorious as further explained below.

### A. INDIVIDUALS WITH DISABILITIES ACT

The Individuals with Disabilities Act ("IDEA") conditions a state's receipt of federal funding upon the state's development and implementation of policies and procedures ensuring that "[a] free appropriate public education is available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). The central means by which a state provides this education is through the development of an IEP that is tailored to the unique needs of a particular child. *Id.* at § 1412(a)(4); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 181 (1982).

The IDEA requires a parent, dissatisfied with an education decision regarding her child, to exhaust state administrative remedies before proceeding to federal court. *Id.* at § 1415(l);[5] *Crocker v.*

---

[5] 20 U.S.C. § 1415(l) provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Subsection (f) provides for an "impartial due process hearing" and subsection (g) provides for an appeal to the state educational agency "[i]f the hearing required by subsection (f) of this section is conducted by a local education agency." 20 U.S.C. §§ 1415(f) & 1415(g)(1).

*Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989) ("Every court that has considered the question has read this statutory scheme as a requirement for the exhaustion of administrative remedies."). Exhaustion is an affirmative defense that must be raised by the defendant. *See, e.g.*, *B.H. v. Portage Pub. Sch. Bd. of Educ.*, No. 08-293, 2009 WL 277051, at *3 (W.D. Mich. Feb. 2, 2009).

The IDEA's exhaustion requirement is not limited to claims brought under the IDEA. Section 1415(l) of the IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action *under such laws seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added). "[T]he IDEA exhaustion requirement applies to claims brought under the Rehabilitation Act or other federal statutes to the extent those claims seek relief that is also available under the IDEA." *M.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008). As summarized by one court, exhaustion is required in three IDEA-related contexts:

> First, exhaustion is clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent. For example, if a disabled student files suit under the ADA and challenges the school district's failure to accommodate his special needs and seeks damages for the costs of a private school education, the IDEA requires exhaustion regardless of whether such a remedy is available under the ADA, or whether the IDEA is mentioned in the prayer for relief.
>
> * * *
>
> Second, the IDEA requires exhaustion in cases where a plaintiff seeks prospective injunctive relief to alter an IEP or the educational placement of a disabled student.
>
> * * *

6

> Third, exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a [free appropriate public education] to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a [free appropriate public education]). Such claims arise under either the IDEA (if the IDEA violation is alleged directly) or its substantive standards (if a § 504 claim is premised on a violation of the IDEA), so the relief follows directly from the IDEA and is therefore "available under this subchapter." 20 U.S.C. § 1415(l).

Payne, 653 F.3d at 875.

Thus it is irrelevant that Plaintiffs did not expressly plead an IDEA claim. In order to determine if Plaintiffs were required to exhaust their federal claims before filing suit, this Court must first examine the relief requested in Plaintiffs' complaint. If the relief sought by Plaintiffs could have been provided by the IDEA, then exhaustion was necessary and Plaintiffs' complaint must be dismissed.

In the current matter, Plaintiffs allege two federal claims: (1) a violation of Section 504 of the Rehabilitation Act; and (2) a violation of Title II of the ADA. Plaintiffs' complaint, though, does not explicitly link each claim to a separate form of requested relief. Rather, the complaint contains a general "Request for Relief," which includes issuance of a declaration that Defendants violated Plaintiffs' rights under the above-mentioned statutes, an award of damages in an amount to be determined at trial and attorney's fees.

First, Plaintiffs' request for attorney's fees is indeed available under the IDEA. *See* 20 U.S.C. § 1415(i)(3)(B). Moreover, the inclusion of compensatory damages likewise provides no safe harbor from the IDEA's exhaustion mandate. The Sixth Circuit—in conformity with the majority of other circuits—has held that plaintiffs cannot evade the exhaustion requirement simply by limiting their prayer for relief to a request for damages. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000) ("[W]e agree with those courts that have decided that a mere claim for money damages is not sufficient to render

exhaustion of administrative remedies unnecessary . . . ."). Accordingly, this Court must look beyond the "damages" and "attorney's fees" request and carefully discern the theory or underpinnings behind Plaintiffs' allegations in order to determine if exhaustion under the IDEA is required. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 246 (2nd Cir. 2008) ("[T]he theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply . . . .") (quotations and citation omitted).

Instructive is the Second Circuit's decision in *Cave*, *supra*, a case involving a hearing-impaired student's request to allow a service dog to accompany him to school. The student's request was denied by school officials because the student's class schedule and overall education program would have required modification. Much like the instant case, the appellants in *Cave* argued that their claim was not one of violation of the IDEA's mandate for the provision of a FAPE, but was rather a claim for unlawful discrimination under the ADA and Rehabilitation Act, among others statutes. There, the school officials' decision was upheld because the court was not convinced that the student's claims were materially distinguishable from claims falling within the ambit of the IDEA:

> The high school principal and the school district's director of special education testified before the district court that John, Jr.'s class schedule under his existing IEP would have to be changed to accommodate the concerns of allergic students and teachers and to diminish the distractions that Simba's [*i.e.*, the service dog] presence would engender. (citation omitted). School authorities would also have to make certain practical arrangements to maintain the smooth functioning of the school and to ensure both that Simba was receiving proper care and that John, Jr. continued to receive necessary and appropriate educational and support services. (citation omitted). It is hard to imagine, for example, how John, Jr. could still attend the physical education class while at the same time attending to the dog's needs; or how he could bring Simba to a class where another student with a certified allergic reaction to dogs would be present. (citation omitted). These issues implicate John, Jr.'s IEP and would be best dealt with through the administrative process.
>
> We thus agree with the district court here that 'at least in part, the plaintiffs are challenging the adequacy of John, Jr.'s IEP because it does

> not include a service dog.' (citation omitted). The relief appellants seek, 'namely permission to bring the service dog to school, is in substance a modification of John, Jr.'s IEP . . . [and] is available under the IDEA.' (citation omitted).

*Cave*, 514 F.3d at 247–48.

Here, Plaintiffs' response brief strongly disclaims any challenge to the efficacy of EF's IEP. As Plaintiffs would have it, they are instead arguing that Defendants' failure to accommodate a disabled individual (*i.e.*, EF) in a place of public accommodation (*i.e.*, EF's school) violates the ADA and Rehabilitation Act. Put another way, Defendants' obligation to satisfy those statutes "was entirely separate from the Defendants' obligation to provide a [FAPE] under the IDEA." *See* Dkt. # 18, p. 15–16 ("The education program created by the Defendants with input from [EF's] family and medical providers did provide the educational opportunity that is required as a matter of law."); ("The IDEA addresses only the Defendants' obligation to formulate a plan to provide a student with a [FAPE].").

The Court concludes that the IDEA's exhaustion requirement was triggered here. Despite the light in which Plaintiffs cast their position, the Court fails to see how Wonder's presence would not—at least partially—implicate issues relating to EF's IEP. Borrowing from the discussion in *Cave*, it appears conceivable that EF's IEP would undergo some modification, for example, to accommodate the "concerns of allergic students and teachers and to diminish the distractions [Wonder's] presence would engender." Moreover, having Wonder accompany EF to recess, lunch, the computer lab and the library would likewise require changes to the IEP. Again, by way of example, the IEP would need to include plans for handling Wonder on the playground or in the lunchroom. Defendants (*i.e.*, the school and school district) would also have to make certain practical arrangements—such as developing a plan for Wonder's care, including supervision, feeding, and toileting—so that the school continued to maintain functionality. All of these things undoubtedly implicate EF's IEP and would be best dealt with through the administrative process.

As one panel from within the Sixth Circuit has aptly commented: "States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the [IDEA]. Federal courts—generalists with no experience in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose." *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989). In brief, the Court finds that Plaintiffs were obliged to exhaust the administrative remedies available under the IDEA before filing the current lawsuit. Accordingly, because Plaintiffs' do not contest that they failed to exhaust the IDEA's administrative remedies, Plaintiff's complaint will be dismissed without prejudice.

## V. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [dkt 17] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint [dkt 1] is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Date:  January 10, 2014                                         s/Lawrence P. Zatkoff
                                                                Hon. Lawrence P. Zatkoff
                                                                U.S. District Judge